Department of Health and Human Services. All right, our final case this morning is number 17-1598, York Telecom Corporation versus United States. Mr. Donahue. Daniel Donahue for Appellant, York Telecom Corporation, Your Honor. I thank the court for holding oral argument in our case, we didn't have oral argument below. I'd like to simplify this case by asking the panel to assume for the sake of this argument that the lower court correctly held that the questions and answers in this case amended the solicitation and rendered it patently ambiguous. The court's error was in failing to address later solicitation amendments that resolved that ambiguity by repeating the 500 employee size standard that my client meets here. I'm confused because this is not a case in which an unsuccessful bidder is challenging an award. You've got the contract. That's right. I understand the regulatory structure, which is not very well explained in either one of the briefs, that if the contract was improperly awarded because there was a 150 small business requirement that the government is obligated to terminate the contract and that there really isn't any question about that. Is that not the case? Your Honor, I think you're raising the question of jurisdiction. Did the Court of Federal Claims have jurisdiction? No, I'm not raising the jurisdiction, I'm just saying if in fact the government mistakenly awards a contract to somebody who has more than 150 employees and that that was improper and that the regulations say that you had to have fewer than 150 employees, the government is in fact obligated to terminate that contract, right? Your Honor, if the solicitation limited eligibility for contract award to contractors who have less than 150 employees... I'm saying the solicitation... Let's say the solicitation mistakenly said 500, but that the regulation requires 150. The government is obligated to terminate that contract because it's contrary to the requirements of the Small Business Act. I disagree with that, Your Honor. What case says that that's the case? Because certainly the regulations talk about the government's obligations to terminate a contract which is erroneously awarded, right? Your Honor, the Competition and Contracting Act, here 10 U.S.C. 2305b1, requires a contracting agency to award contracts based solely on the factors stated in the solicitation. If the solicitation states a 500 employee size standard as we contend it does, and that that's not ambiguous, then the Competition and Contracting Act required the agency to award the contract to my client. Isn't the government obligated to terminate a contract which was improperly awarded? I think that's right. Yeah. Well, that's your problem. So the question is then, what's the right size standard here? I agree with that. I agree with that, Your Honor. So why are we talking about patent ambiguity or latent ambiguity? That seems to me not to have anything to do with it. The real question is what's the size standard for this contract? The size standard stated in the instruction to offerors stated that the size standard under the NAICS code that was assigned to this solicitation is 150 employees. However, the size standard for a non-manufacturer is 500 employees. You didn't challenge the code, right? No, we didn't challenge that. We're trying to enforce that. The question is what is the code? What's the size standard under this code? What's the size standard under this code? 150 employees under an IT value-added reseller exception to that NAICS code. It's 150 employees. We don't dispute that the NAICS code... You don't satisfy the 150 requirement. We do not, and we never claim that we did. So how is it that you can get this contract if you have over 150 employees? Because the solicitation said that the small business size standard for a non-manufacturer like my client is 500 employees and the solicitation... They made a mistake. If they made a mistake, the government still is obligated to terminate the contract because it wasn't properly awarded. Your Honor, I think what... It's not a mistake when the government repeatedly sets out the size standard in the instructions to offerors. It's ambiguous. Is it not? Well, I don't think it's ambiguous. You mean the provision itself, the instructions to offerors? The contract itself is ambiguous. It's not, Your Honor, and that's not what the Court of Federal Claims held. The instructions to offerors, the section has two sentences. The first sentence says the size standard for this solicitation is the NAICS code, which requires 150 employees, and the next sentence says... So you say without the Q&As, it's unambiguous? That's right. And assuming that the Q&As rendered it ambiguous, that ambiguity was cured by later amendments which repeated the 500-employee size standard here. If the government did not want to impose a 500-employee size standard, it was incumbent on the government to say so in the solicitation, but they didn't. They repeatedly set it forth, including in the final RFP. How long was it possible for the government to continue a contract which was improperly awarded? I mean, for section 121.1009G2 specifically says if there's an award that was improper and the OHA determines that it didn't comply with the size requirements, it says the contracting officer shall either terminate the contract or not exercise the next option. That's it. You know? It doesn't make any difference if they made a mistake in describing the size standard in the contract. If the size standard is 150 and you don't have 150, they have to terminate the contract. No? Your Honor, those regulations aren't controlling here. The reason is that we brought a bid protest action in the Court of Federal Claims which has jurisdiction over this kind of exact protest by an awardee under this Court's decision in systems application technology, the 2012 decision. I understand that you have a bid protest, but I don't understand why the regulations we're trying to figure out whether the government could properly terminate this contract, right? Right. And the regulations seem to say if the size standard makes the bidder ineligible, you're supposed to terminate the contract. Right. Your Honor, what I'm challenging in your question is your statement that the regulations limit the size standard to the NAICS code, which here is 150 employees. They do not. The Small Business Administration's regulation at 13 CFR 121.402 is entitled, what size standards are applicable to federal government contracting programs? I understand that. And I think you have an argument that the size standard should not be 150 because of the way that regulation is written, but I'm just trying to get you to focus on what it seems to me is the correct standard, and that is what was the right size standard for this contract? 500 employees, just like the solicitation said. Why is that true? Because that regulation, what are the size standards, says in paragraph A, you're small if you meet the NAICS code. In paragraph B2, it says, for a non-manufacturer, a non-manufacturer will be deemed small if it has fewer than 500 employees. So why isn't the 500 employee size standard proper here? Just like the solicitation said. So, your honor, have I answered your question? Am I missing something? No, I think you've answered it. Okay. Okay. So my first point is that, assuming that the questions and answers rendered this solicitation ambiguous as to whether or not the 500 employee size standard applied, that was cured in later The second error that the court made was in its interpretation of the instructions to offer us the FAR clause, because the court held that that clause requires an offeror to meet both the NAICS code and the 500 employee size standard if you're a non-manufacturer, and that's contrary to the plain meaning of that. It requires us to put in words in that provision that are not there, and it leads to an absurd result. The court below here said that that provision means that you have to have fewer than 500 employees to compete for the contract, but you have to have fewer than 150 employees to be eligible for the award. That doesn't give meaning to the 500 employee standard in that sentence. No one's going to compete for a contract if they're ineligible for award. So it doesn't give meaning to it. So that's an improper interpretation. The government's position here, and I think, Judge Dyke, you were getting to this, that the Small Business Act requires that the only size standard for a procurement is in the NAICS code, is refuted by the SBA's regulations, which I say, 121.402, the size standard regulation paragraph A says you're small if you meet the NAICS code. Paragraph B2 says that a non-manufacturer is deemed small if it has fewer than 500 employees. The instructions to offerors here were completely consistent with that, and it's undisputed that my client meets that standard. So the contract was properly awarded to my client, and the court's decision to the contrary should be reversed. Your Honor, I've reserved five minutes for rebuttal, and if you have questions of me, I'd love to answer them. Otherwise, I'll reserve my remaining time for rebuttal. Okay. You can reserve the remainder of your time. Ms. Speck? Good morning, Your Honors. May it please the Court. We respectfully request that the Court affirm the- Am I right that the government has an obligation to terminate the contract? Under the regulations, if the contract states the wrong size standard and the Small Business Administration determines that the correct standard, in this case, 150, right? Yes, Your Honor. Okay. I don't think you made that very clear in your brief. So the question then boils down to whether the regulations impose here a 150 size standard or a 500 size standard, and I think the regulations are amiss because they seem to be internally contradictory. Well, Your Honor, to back up, you correctly explained that there are Section 15A of the Small Business Act permits the SBA to set small business set-asides, and then Section 3A for the Act permits the SBA to set size standards and establishes that only the SBA may set size standards, and here the SBA has clearly set a 150 employee size standard for this NACE code. They considered if I- Why does it have this reference to the non-manufacturing rule, which would seem to be completely in conflict with the 150? Well, Your Honor, the non-manufacturer rule is intended only to be for procurements for supplies. This procurement was designated- This was a services contract, and yet the regulations seem to say that the non-manufacturing rule has something to do with it, right? Yes, Your Honor. With the non-manufacturer rule, basically once something's been set aside for a small business, then there are certain limitations that still govern, and those are the limitations on subcontracting, and there are different limitations. Those are in Section 46 of the Act if it's a procurement for services or for supplies or if you're buying supplies from the person who manufactures it or if you're buying supplies from someone who's reselling a product produced by somebody else, and that's what we're dealing with here, reselling a product and providing services for something that is produced by someone else. In that case, the non-manufacturer rule would then provide additional restrictions in that you have to provide the product of a domestic small business manufacturer. So the 150 employee employer has to buy supplies from a supplier that has no more than 500? Is that what you're saying? Well, Your Honor, our position, I believe under the current regulation, that would be the case because this still is designated for services. At the time, this was the SBA's regulations provide that this size is determined at the date itself certifies it's small. At the time, the regulation didn't apply the non-manufacturer rule. At the time, the regulation didn't make sense in referring to the non-manufacturer rule, right? I'm sorry, Your Honor. At the time of this solicitation, the regulation concerning this code and the reference to the non-manufacturer rule made no sense, right? I don't know that it made no sense. It didn't require, to the extent there was a supply component, which was acknowledged in the 2016 final rule, it said that to the extent there's a supply component for these information... Why didn't you just say it was at least ambiguous? I do find this whole area of law somewhat confusing. I would acknowledge that to the court, but I think the bottom line is even if they had ever qualified, the Federal Acquisition 52.212-1 is known as a shorthand for the non-manufacturer rule. The statute specifically states that in order to qualify under the non-manufacturer rule, so even assuming that applies, that you have to meet the size standard specified in the NACE code. Even setting aside, and the law is well-established, to the extent it all conflicts with the... I would look at the footnote 18, and unfortunately, you did not number the pages of your appendix, but this is in 121.201. Yes, Your Honor. Okay. The in addition sentence. In addition, the offeror must comply with the manufacturing performance requirements or comply with the non-manufacturing rule, which among other things would require that they be a retailer, right? Yes, Your Honor. But they don't have to be a retailer. It doesn't make any sense. I believe the regulation for 406, the one that was in place at the time, required that it to be... Again, we would submit that the regulation, that the statute is clear that you have to meet the NACE code specified for the procurement, and whatever is specified in regulations that... Your Honor, you're not addressing the in addition sentence. That's the problem here. If you stop the footnote before the in addition sentence, it's understandable. The in addition sentence makes it not understandable, because it talks about compliance with non-manufacturer rule, which does not, in fact, exist as a requirement with respect to someone in this code. Even if Judge Dicey is right, doesn't at best this create a patent ambiguity? And so the lower court's untimeliness decision would still pan. So couldn't you just say, even if you are completely right, Judge Dyke, about all of this, at best that creates an ambiguity of the number of people? Yes, Your Honor. Certainly, we would submit that the SBA has... Pardon me, that NASA articulated at least five times that a 150-employee size standard applied. But it doesn't make any difference what the solicitation said. You said, if it's contrary, the question is what the regulation required. Oh, I believe the question, Your Honor, is what the statute requires. What the statute and the regulation require. And if the award was contrary to the statute and regulations, the contract should be terminated. If it wasn't contrary to the statute and the regulations, it shouldn't be terminated. And here, you went to the Small Business Administration. You got a ruling as to what was required. They said 150. So it's not so much patent or latent ambiguity. It's a question of our deference, right, to the Small Business Administration's interpretation of the regulation in these circumstances. Well, Your Honor, I would again submit that the statute even... No, no, no. Try to address what I'm saying. Your Honor, yes, we... Somebody argued our deference in this case. I don't remember it being cited anywhere. Your Honor, we articulated it in terms of the statute because to the extent any regulation conflicts with the statute, then that would be... It's always established that the regulation yield to the statute. And here, the statute says even if the non-manufacturer rule applies, they would have to satisfy the size standard specified. It says in the statute, the standard industrial code, which in the Phoenix decision of the Office of Hearings and Appeals understood now to be the North American Industrial Classification System or NACE code. So the statute is clear that they would under no circumstances be entitled to the protection of the non-manufacturer rule because they do not meet the size standard established for the solicitation, which the size standards are established in the statute through 15A and through 3A, which says that only the SBA can set size standards. So to the extent anything in the regulation conflicts with the statute, then it has to yield to the statute, which says that they have to meet the size standard specified by the NACE code. Right. And the footnote 18 is part of the NACE code. I don't... The NACE code as the SBA established is that... The footnote 18 is part of the NACE code. It's a footnote to that NACE code provision. Your Honor, the NACE code, the SBA has articulated, again, in both rules that it was establishing a 150-employee size standard. It actually had wanted to establish a 500-employee... Answer my question. Is not footnote 18 a footnote concerning the NACE code? It's an explanation to the NACE code, but I think the SBA has specified a 150... 541-519 says 150 employees. And that is understood, has been expressed in the rule and the subsequent rule to be the size standard for this solicitation. And that is what OHA upheld. Certainly, as the Court explained in the Palladian Partners decision and as established in the regulation, it is the SBA and the Office of Hearing and Appeals that's required to set size standards. And the only size standard the SBA has repeatedly reiterated for this is 150 employees. Your Honor, I guess I don't understand which sentence that you're citing to that you believe would change that this to be a different size standard. I'm not saying it changes it.  To have this explanation of the NACE code to talk about the non-manufacturer rule. You have that footnote 18 there? And you're looking at the one that I attached to my brief at page 135 from the version from 2000... My copy doesn't have any pages. The version from 2013. I'm just looking at the top from docket 25-2. I'm looking at the page that you attached, which has 121.201 in it. Yes, Your Honor. And it has a footnote 18 to this NACE code. Yes, Your Honor. And the sentence that you're looking at is... The in addition sentence. 21-2. I'm sorry, I don't see a sentence beginning with in addition under footnote 18. It says NACE code 541-519. That's the one we're dealing with here, right? Yes. And footnote 18 begins NACE code 541-519 information technology value is reseller blah, blah, blah. Yes, Your Honor. And toward the end of that, there's a sentence begins in addition. I believe the intent of complying with the non-manufacturing performance requirements is merely to say that there, I guess, is to... In addition, the offeror must comply with the manufacturing performance requirements or require with... That's the new reg, Your Honor. The reg that was in place in... That changed in 2016. The reg that was in place in 2013 to 2014 says for purposes of government procurement and information technology procurement, I don't think it contains that in addition sentence, Your Honor. It was an added clarification? What happened in 2016 was that the SBA became concerned that they wanted... They were concerned that this has a supply component although it still requires there to be a 15 to 15% value added services. In 2016, which would not be applicable to this procurement, the SBA determined that given that there was a supply component, that they would have to comply with the requirement of the non-manufacturer rule that you provide the product of a domestic small business manufacturer, something that they were not required to do before. So even though it was still a services NACE code, they were establishing this additional requirement. Again, at that point when they promulgated the rule in 2016, they reiterated the 150 employee size standard. Where is the provision that applies to this procurement? The provision that applies to this procurement was attached to my brief. It's at page 135. I didn't number it because it was not part of our appendix, but I filed an addendum with our brief. That's what I'm looking at. My copy does not have any page numbers on it. I'm just looking at the top under what I filed, Your Honor. The first page of this amendment that I wrote here. I believe I also, Your Honor, pardon me, included two copies of the regulation. So the page that I believe Your Honor is looking at is the effective December 21, 2016. I'm asking you where the provision is. Yes, Your Honor. It's two pages before that. So there is the note 18, and that is from the section that was applicable to this procurement. So there is, if you turn a prior page, you'll see that there was a 121.201, and that it was effective from November 27, 2013 to January 21, 2014. And then you will see the NACE code there that does not have the in addition language. And I believe even York Telecom has acknowledged, and again, the shift in 2016 was just to the extent they are supplying products to ensure that they're supplying the product for the supply component to ensure that it was the product of a small business manufacturer. I apologize for the confusion, Your Honor. Okay. And finally, we would submit that there are SPA decisions and court decisions that would establish that as long as the subsequent amendments to the extent that the court accepts our patent latent ambiguity argument, the subsequent amendments did not change the size standard, the engineering consulting decision... The patent versus latent ambiguity argument under your theory is irrelevant. The only question is, did the contract state the right size standard under the statute of regulations, right? We've argued it both ways, Your Honor. We've argued under the blue and gold argument. We've also argued that if the court determines it's not waived, then the size standard is 150 employees. But is not your position that regardless of what the contract said, if the contract made an award that was improper under the size standards, it has to be terminated, right? Yes, Your Honor.  Yes. Or the option not exercised. Okay. Thank you. Mr. Donahue, you've got almost five minutes. Your Honor, I tried to simplify this for the court and I obviously failed. I'm going to try again. The government's position here is that the non-manufacturer rule, that regulation, and this solicitation provision for 500 employees, that that all applies if this is a supply contract. And Judge Dike, you were saying this NAICS code is a services NAICS code. And that's why the non-manufacturer rule and it's 500 employee size standard doesn't apply here. I want to try to persuade you that this footnote 18 that the court was addressing with my opponent says that this that this IITVAR exception Are you talking about the one that was in effect? I'm talking about the one that was in effect at the time. And the government correctly identified which one was in effect at the time, right? I agree with that. Judge, the size standard regulation this is 121 406 B2 406 B says that the contracting officer has to choose the NAICS code that's appropriate for the principal purpose of the contract. If the principal purpose is supplies then it should provide a supplies NAICS code. This exception to NAICS code 541 519 says in the sentence right before the one that you were asking about, the in addition one okay in the defendant or the appellee's appendix to its brief page 135 the sentence I want to focus on it says for purposes of government procurement and information technology procurement classified under this industry category that is this NAICS code must consist of at least 15% and not more than 50% of value added services as measured by the total contract price and then in the last sentence it says it again says that the value added services can't be have to be less than 50% of the total contract price here that means that this ITVAR exception to 541 519 the contracting officer had to determine that the principal purpose of this was supplies and that services counted for less than 50% and so this is a supply NAICS code even though it's never challenged the code and under the regulations it's supposed to challenge the code we're not challenging the code your honor and I'm sorry for interrupting you we're trying to enforce this solicitation this solicitation stated a size standard that my client meets 500 employees the argument is that the FAR got it wrong and that the contracting officer got it wrong but the burden was on my client to know all that and to not bid the contract or object about it and that's not only unfair it's incorrect because the 500 employee size standard stated in the solicitation applies and the government admits this if this NAICS code this ITVAR exception is a supply code NAICS code and because it says it's only appropriate where services are less than 50% it says that it is a supply NAICS code in other words the IT equipment accounts for more than 50% of the contract price and so it's a supply NAICS code and thus there's no reason why the 500 employee size standard stated in the solicitation doesn't apply under the regulations both the size standards and the non-manufacturer rule okay thank you Mr. Donahue thank both counsel the case is submitted that concludes our session thank you very much your honor all rise the honorable court is adjourned until tomorrow morning it's at o'clock a.m. thank you